| | |
|---|---:|
| Chambers of<br>**GEORGE L. RUSSELL, III**<br>United States District Judge | 101 West Lombard Street<br>Baltimore, Maryland 21201<br>410-962-4055 |

August 29, 2017

MEMORANDUM TO PARTIES RE:  Elabbas M. Abdelnaby v. Durham D&M LLC, et al.
                          Civil Action No. GLR-14-3905

Dear Parties:

      Pending before the Court is Defendants', Durham D&M LLC, Durham School Services LP ("Durham"), and Durham Transportation, Inc., Motion for Summary Judgment. (ECF No. 71). The Motion is ripe for disposition and no hearing is necessary. See Local Rule 105.6 (D.Md. 2016). For the reasons stated below, the Court will grant the Motion.

      Plaintiff Elabbas M. Abdelnaby is a former employee of Defendants. (Am. Compl. ¶ 1, ECF No. 40).[1] On May 21, 2013, Abdelnaby attended a meeting called by Defendants' management personnel, where many employees were present. (Id.). During the meeting, Abdelnaby asked one of the managers a question, when another Durham driver, Frank McNeil, interrupted him by saying, "You ignorant African nigger, learn English or go home" (the "Incident"). (Id. ¶ 2; Abdelnaby Dep. 73:9–11, Sept. 6, 2016, ECF No. 71-5). Many employees laughed after McNeil's statement, and none of Defendants' management personnel took action during the meeting. (Am. Compl. ¶¶ 2–3). Ten days later, on May 31, 2013, Abdelnaby filed a complaint through Durham's employee hotline. (Abdelnaby Dep. 113:1–5; see also id. Ex. 3, ECF No. 71-6). The hotline representative created a report describing the Incident. (Id. Ex. 3). Durham assigned Abdelnaby's complaint to John Kemblowski, Northeast Area Human Resources Manager. (Kemblowski Decl. ¶¶ 2, 6, ECF No. 71-4).

      Defendants maintain Kemblowski began an investigation of Abdelnaby's complaint on May 31, 2013, the same day Abdelnaby filed his complaint. (Id. ¶ 6). Defendants further maintain that Kemblowski interviewed McNeil about the Incident. (Id. ¶ 7). Kemblowski contacted Abdelnaby to request an interview, but they never spoke. (Id. ¶ 8).[2] As a result of Kemblowski's investigation, Defendants contend they gave McNeil a final written warning for the Incident and for an unrelated incident. (Id. ¶ 9; see also id. Ex. B). Abdelnaby disputes that Kemblowski investigated the complaint or interviewed McNeil. Abdelnaby also disputes that Defendants gave McNeil a final written warning. The parties do not dispute that Abdelnaby has

---

[1] The facts outlined here are set forth in Abdelnaby's Amended Complaint. To the extent the Court discusses facts that Abdelnaby does not allege in his Complaint, they are uncontroverted unless otherwise noted, and the Court views them in the light most favorable to Abdelnaby. The Court will address additional facts when discussing applicable law.

[2] Abdelnaby does not dispute that Kemblowski contacted him. (Pl.'s Resp. at 3–4, ECF No. 73). He does, however, challenge whether Kemblowski was the appropriate person to conduct the investigation. (Id. at 4).

not made any further complaints of discrimination by McNeil or any other Durham employee to Defendants since reporting the Incident. (Abdelnaby Dep. 198:17–20; id. 200:1–8).

On November 4, 2014, Abdelnaby initiated this action in the Circuit Court for Baltimore City, Maryland. (Compl., ECF No. 2). On December 16, 2014, Defendants removed this action to this Court based on federal question jurisdiction under 28 U.S.C. § 1331 (2012) and diversity jurisdiction under § 1332. (ECF No. 1). On November 24, 2015, Abdelnaby filed an Amended Complaint. (Am. Compl.). In his four-count Amended Complaint, Abdelnaby alleges: employment discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e et seq. (2012) and Title I of the Civil Rights Act of 1991 ("Title I"), 42 U.S.C. §1981(a) (Count I); violation of the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 et seq. (Count II); violation of the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code Ann., State Gov't §§ 20-601 et seq. (West 2015) (Count III); and attorney's fees and costs (Count IV). (Id.). On October 14, 2016, Defendants moved for summary judgment. (ECF No. 71). On October 31, 2016, Abdelnaby opposed the Motion, (ECF No. 73), and on November 17, 2016, Defendants filed a Reply, (ECF No. 74).

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) (citation omitted).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of her case where she has the burden of proof, "there can be 'no genuine [dispute] as to any material

fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). An employer violates § 2000e-2(a)(1) by, inter alia, requiring an African-American employee to work in a racially hostile environment. E.g., Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 277 (4th Cir. 2015). A hostile work environment exists when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Id. (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). To survive summary judgment, a plaintiff must show that a reasonable jury could find that the harassment was "(1) unwelcome; (2) based on [his] race; (3) sufficiently severe or pervasive to alter the conditions of [his] employment and to create an abusive work environment; and (4) imputable to [his] employer." Pryor v. United Air Lines, Inc., 791 F.3d 488, 495–96 (4th Cir. 2015) (citing Okoli v. City of Balt., 648 F.3d 216, 220 (4th Cir. 2011)). A plaintiff must prove the same elements for hostile work environment claims under § 1981. E.g., Pryor, 791 F.3d at 495 (citing Spriggs v. Diamond Auto Glass, 242 F.3d 179, 184 (4th Cir. 2001)).

The parties dispute whether Abdelnaby has shown that a reasonable jury could find that McNeil's harassment during the Incident was imputable to Defendants—the fourth element.[3] Under this element, when the harasser is the victim's co-worker rather than the victim's supervisor, the co-worker's harassment is imputable to the employer only if the employer was "negligent in controlling workplace conditions." Boyer-Liberto, 786 F.3d at 278 (quoting Vance v. Ball State Univ., 133 S.Ct. 2434, 2439 (2013)). That is, hostile work environments created by co-workers are imputable to an employer if the employer "knew or should have known about the harassment and failed to take effective action to stop it by responding with remedial action reasonably calculated to end the harassment." Pryor, 791 F.3d at 498 (quoting EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 319 (4th Cir. 2008)) (alterations omitted).

Whether an employer's response to harassment was "reasonably calculated to end the harassment" depends, in part, on the "seriousness" of the harassment. Id. Using the seriousness of the harassment as a benchmark, courts examine whether an employer's response was "proportional" by examining "the promptness of any investigation, the specific remedial measures taken, and the effectiveness of those measures." Id. Of course, "[t]here is no 'exhaustive list' or 'particular combination' of remedial measures or steps" that an employer must respond with to "insulate itself from liability." EEOC v. Xerxes Corp., 639 F.3d 658, 669 (4th Cir. 2011) (quoting EEOC v. Cent. Wholesalers, Inc., 573 F.3d 167, 178 (4th Cir. 2009)). Courts consider "the promptness of the employer's investigation when complaints are made, whether offending employees were counseled or disciplined for their actions, and whether the employer's response was actually effective." Id. When the harassment ceases after the employer's response to it, the response was actually effective—"which in turn evidences" that

---

[3] The parties also dispute the third element of Abdelnaby's hostile work environment claim. For the reasons that follow, however, the Court need not address the third element.

3

the employer's response was reasonably calculated to end the harassment, and thus, the harassment is not imputable to the employer. Id. (quoting Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 676 (10th Cir. 1998)).

Here, Defendants argue that the Incident is not imputable to them because the undisputed facts establish that their response to the Incident was reasonably calculated to end the harassment. The Court agrees.

Abdelnaby contends that Kemblowski should not have been a part of the investigation because Kemblowski led the May 21, 2013 meeting at which the Incident occurred. He also maintains that Defendants failed to punish Kemblowski and another individual, Eric Owen, for failing to admonish McNeil during the Incident. Abdelnaby overlooks that "[t]here is no 'exhaustive list' or 'particular combination' of remedial measures or steps" Defendants must respond with. See id. (quoting Cent. Wholesalers, 573 F.3d at 178). Indeed, the Fourth Circuit has observed that plaintiffs "often feel that their employer 'could have done more to remedy the adverse effects of the employee's conduct.'" Id. at 674.

Instead of focusing on what Defendants did not do, the Court must focus on Defendants' response to the Incident to determine whether it was "reasonably likely to stop the harassment." Id. (quoting Knabe v. Boury Corp., 114 F.3d 407, 414 (3d Cir. 1997). The Court concludes that the undisputed facts show it was. To be sure, the harassment at issue—the use of a racial epithet—is very serious. But Defendants demonstrate that they promptly investigated the Incident. See id. at 669. The investigation began the same day Abdelnaby called Durham's employee hotline to report the Incident—May 31, 2013. (Kemblowski Decl. ¶ 6). Defendants establish that they disciplined the offending employee, McNeil, by giving him a final written warning. Id. ¶ 9; see Xerxes, 639 F.3d at 669. And Defendants prove that their response was actually effective. See Xerxes, 639 F.3d at 669. The parties do not dispute that Abdelnaby has not made any further complaints of discrimination by McNeil or any other Durham employee to Defendants since reporting the Incident. (Abdelnaby Dep. 198:17–20; id. 200:1–8).[4] The Court considers this additional evidence that Defendants' response was reasonably calculated to end Abdelnaby's harassment. See Xerxes, 639 F.3d at 669 (quoting Adler, 144 F.3d at 676). Thus, the undisputed facts establish that the Incident is not imputable to Defendants.

Abdelnaby argues that there is a genuine dispute of material fact over whether Defendants actually investigated the Incident, interviewed McNeil, or gave McNeil a final written warning. The Court disagrees.

Because Defendants have properly made and supported their Motion for Summary Judgment, the burden has shifted to Abdelnaby to identify evidence showing there is a genuine

---

[4] In his Response, Abdelnaby describes three other incidents involving McNeil. The Court concludes these incidents are unavailing for at least three reasons. First, two of the incidents he describes are not supported by any evidence in the record. Second, two of the incidents allegedly occurred before Defendants gave McNeil a written warning. Third, all three alleged incidents involve harassment that was not "based on" Abdelnaby's race because all three incidents involve McNeil harassing co-workers based on them being white. See Pryor, 791 F.3d at 495.

dispute of material fact. See Matsushita, 475 U.S. at 586–87. Abdelnaby fails to do so. He highlights what he argues are facts missing from the record that show Kemblowski never conducted an investigation—a lack of reports, dates, witness statements, or other materials. He challenges whether Kemblowski interviewed McNeil by pointing out that there is no evidence in the record of the date or time of the interview and that another person, rather than Kemblowski, signed Defendants' written warning to McNeil. Abdelnaby's arguments are misplaced because his observations about the record are not a substitute for evidence; the Court may not draw inferences from the record to create a genuine dispute of material fact. See Beale, 769 F.2d at 214 ("The nonmoving party cannot create a genuine dispute of material fact through . . . the building of one inference upon another.").[5]

In addition, Abdelnaby questions whether it was possible for Defendants to complete the investigation and give McNeil a written warning within seven days. But Abdelnaby cannot create a genuine dispute of material fact "through mere speculation." Id. Thus, the Court is left with a record that is bereft of evidence supporting any of Abdelnaby's arguments addressing the investigation or its outcome.

In sum, Abdelnaby fails to create a genuine dispute of material fact over whether Defendants' response to the Incident was reasonably calculated to end the harassment. The Court, therefore, concludes that Abdelnaby fails to show that a reasonable jury could find that the Incident was imputable to Defendants. Accordingly, the Court will grant the Motion.[6]

For the foregoing reasons, Defendants' Motion for Summary Judgment (ECF No. 71) is GRANTED. Judgment is ENTERED in favor of Defendants. Despite the informal nature of this memorandum, it shall constitute an Order of this Court, and the Clerk is directed to docket it accordingly, CLOSE this case, and mail a copy to Abdelnaby at his address of record.

Very truly yours,

/s/
George L. Russell, III
United States District Judge

---

[5] What is more, some of Abdelnaby's observations about the record are inaccurate or misleading. He asserts that the record contains no dates of Kemblowski's investigation, but Kemblowski declares that the investigation began on May 31, 2013, (Kemblowski Decl. ¶ 6), and Abdelnaby provides no evidence to the contrary. He also submits that there is no evidence Defendants gave notice that they took any action related to the Incident, but there is no dispute that Durham made the outcome of the investigation available through its employee hotline. (Id. ¶ 10).

[6] "The MFEPA is the state law analogue of Title VII." E.g., Dyer v. Oracle Corp., No. PWG-16-521, 2016 WL 7048943, at *2 n.5 (D.Md. Dec. 5, 2016) (quoting Royster v. Gahler, 154 F.Supp.3d 206, 215 (D.Md. 2015)) (internal quotation marks omitted). Thus, for the aforementioned reasons, Abdelnaby's claim under MFEPA also fails.